IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 51, AFL-CIO, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  07-3194 |
| VERIZON NORTH, INC., | ) ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Plaintiff International Brotherhood of Electrical Workers, Local No. 51's (IBEW) Motion for Summary Judgment (d/e 13). For the reasons stated below, the Motion for Summary Judgment is allowed to the extent that the Court finds that the dispute at issue is arbitrable. It is denied to the extent that the Court will not order the parties to immediately reschedule the arbitration hearing and will not award attorneys' fees.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted "'if the pleadings,

1

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Herman v. Nat'l Broad. Co., 744 F.2d 604, 607 (7th Cir. 1984). Once the moving party has produced evidence showing that it is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "Summary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" McKenzie v. Ill. Dept. of Transp., 92 F.3d 473, 479 (7th Cir. 1996) (quoting Celotex, 477 U.S. at 322). It is not a discretionary remedy; if the plaintiff lacks sufficient evidence, summary judgment must be granted. Jones v. Johnson, 26 F.3d 727, 728 (7th Cir. 1994).

To successfully oppose a motion for summary judgment, the

nonmoving party must do more than raise a "metaphysical doubt" as to the material facts. See Matsushita Elec. Indus. Co., 475 U.S. at 586. He must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Id. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. In determining whether a genuine issue exists, courts should construe all facts and reasonable inferences in the light most favorable to the non-moving party. Moser v. Ind. Dept. of Corr., 406 F.3d 895, 900 (7th Cir. 2005). Courts are "not required to draw every conceivable inference from the record. [They] need draw only reasonable ones." Tyler v. Runyon, 70 F.3d 458, 467 (7th Cir. 1995) (internal quotation marks omitted).

The facts below are taken from the parties' summary judgment briefing and supporting evidence. For purposes of this Motion, where the parties dispute a fact, the Court accepts Verizon's position, because Verizon is the non-moving party. Additionally, in several instances IBEW has not disputed a fact but has argued that it is immaterial. The Court judges materiality, however, and it has accepted some facts IBEW deemed insignificant.

FACTS

Joseph Taylor is a senior cable technician employed by Verizon. As a senior cable technician, Taylor drove commercial motor vehicles for Verizon. He suffered persistent lower back pain, however, and underwent surgery that involved the implantation of a morphine pump. This pump administers morphine daily. On June 2, 2006, Verizon restricted Taylor from driving commercial motor vehicles. Verizon asserts that it did so because his use of multiple narcotic medications could affect his ability to operate such a vehicle.

Taylor is a member of the IBEW. Verizon and IBEW are parties to a Collective Bargaining Agreement (Agreement) that defines certain rights and obligations of the parties after a covered employee becomes sick, injured, or disabled. Specifically, at Section 14, the Agreement states:

> Employees shall be allowed regular pay at basic rates on scheduled working days absent from duty when incapacitated by illness or physical injury (not compensable under Worker's Compensation Act) . . . .
>
> . . . .
>
> Employees with absence beyond three (3) consecutive scheduled workdays must immediately file for disability benefits with the Short Term Disability Administrator. Failure to do so may result in denial of sickness disability benefits.

Compliance With Court Order (d/e 8), Exhibit 1, Agreement, ¶¶ 14.1, 14.13. At Section 8.3, the Agreement also provides:

> The Union agrees for its members that individually and collectively they will perform loyal and efficient work and service and that they will use their influence and best efforts to protect the property and interests of the Company, its good name, and its service to the public. The Company agrees that it will not act capriciously or arbitrarily in its treatment of employees, and will apply the terms of this Agreement impartially to all employees.

Compliance With Court Order , Exhibit 1, Agreement, ¶ 8.3; Memorandum in Support of Plaintiff International Brotherhood of Electrical Workers, Local No. 51's Motion for Summary Judgment (d/e 14) (Memorandum in Support of Motion for Summary Judgment), at 4, Undisputed Fact 7. Taylor is an Agreement-covered employee.

On June 20, 2006, IBEW filed a grievance with Verizon alleging that Verizon had placed Taylor on short term disability in violation of Sections 8.3 and 14 of the Agreement. The grievance noted that a doctor had approved Taylor to return to work without restrictions, and it demanded that Verizon reinstate Taylor immediately. Verizon denied the grievance, stating that the Federal Motor Carrier Safety Act (FMCSA) regulations prohibit Taylor from operating a commercial motor vehicle. Verizon asserts that it did not place Taylor on short term disability; rather, it found him

5

medically disqualified from operating a commercial motor vehicle, and he subsequently applied for short term disability benefits.

Under the Agreement, "[a]ny grievance which resulted from an alleged violation of a provision of this contract which the parties are unable to settle by the use of Article 6, 'Adjustment of Differences,' may be submitted to arbitration." Compliance With Court Order, Exhibit 1, Agreement, ¶ 7.1; Memorandum in Support of Motion for Summary Judgment, at 3, Undisputed Fact 7.1. After Verizon denied IBEW's grievance, IBEW demanded arbitration, and the parties selected an American Arbitration Association arbitrator. An arbitration hearing was scheduled for November 8, 2006. In a pre-hearing conference with the arbitrator, however, Verizon argued that this dispute was not arbitrable. According to Verizon, the Agreement did not govern the dispute; the FMCSA regulations did. Both parties and the arbitrator agreed to postpone the arbitration proceeding to allow the parties to take advantage of procedures for resolving the dispute under the FMCSA regulations.

On November 7, 2006, the arbitrator issued an Interim Award ordering Taylor "to expeditiously pursue FMCSA procedures for resolving this dispute, including submitting to an independent medical exam and

6

pursuing any appeals during this time period." Defendant Verizon North Inc.'s Brief in Opposition to Plaintiff's Motion for Summary Judgment (d/e 15) (Response), Exhibit 1, Amended Declaration of Michael Kruger, Exhibit B, Interim Award of Arbitrator; Response, at 4, Undisputed Fact 26; Reply, at 5 (failing to dispute Defendant's Fact 26). The arbitrator canceled the upcoming arbitration hearing and scheduled a status call for February 6, 2007. Response, Exhibit 1, Amended Declaration of Michael Kruger, Exhibit B, Interim Award of Arbitrator.

The parties then began the FMCSA regulations' review process. At an initial stage, Taylor was approved to drive commercial motor vehicles, but Verizon has contested that finding. The FMCSA regulations' proceedings remain ongoing. On July 24, 2007, however, the American Arbitration Association administratively closed the arbitration file.

On July 18, 2007, IBEW filed suit in this Court, alleging that Verizon's refusal to reschedule the arbitration hearing to resolve the grievance is a breach of the Agreement's arbitration provisions. IBEW asks the Court to compel arbitration of the grievance and order Verizon to reschedule the arbitration hearing. Complaint (d/e 1), ¶ 27.

ANALYSIS

IBEW is entitled to partial summary judgment. According to IBEW, the Agreement requires Verizon to arbitrate issues such as this one, and Verizon has refused to do so. Thus, IBEW argues, this Court must compel Verizon to abide by the Agreement and arbitrate. Verizon insists the issue is not arbitrable because the FMCSA regulations govern it, not the Agreement. The Court finds that this issue is arbitrable, but that the parties are arbitrating.

I.  ARBITRABILITY

In labor law, arbitration is the preferred means of resolving disputes. United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 566 (1960). "Agreements to arbitrate disputes have been a common feature of collective bargaining agreements for quite some time. They are entitled to a hospitable reception in the courts, so that they can play their role of reducing industrial strife and maintaining a harmonious workplace." Butler Mfg. Co. v. United Steelworkers of Am., 336 F.3d 629, 630 (7th Cir. 2003). Arbitrability of disputes is governed by the terms of the collective bargaining agreement between the parties, however. Am. Mfg. Co., 363 U.S. at 567-68. Parties are only required to arbitrate disputes they agreed to arbitrate.

8

United Steelworkers of Am., AFL-CIO v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).

A.    The Matter at Issue

Whether IBEW and Verizon agreed to arbitrate the matter at issue here depends in part on what the matter at issue actually is. IBEW contends that the matter at issue is whether Verizon acted capriciously or arbitrarily when it found Taylor medically unqualified to operate a commercial motor vehicle.[1] If IBEW is correct, the issue is an alleged violation of the Agreement, and the parties agreed to arbitrate all allegations of Agreement violations. Compliance With Court Order, Exhibit 1, Agreement, ¶ 7.1.

Verizon asserts that the matter at issue is whether Taylor is qualified to operate a commercial motor vehicle. If Verizon is correct, the issue is a matter of driver qualifications, which the Agreement does not discuss. According to Verizon, the matter is then governed by the FMCSA. See 49 C.F.R. § 301 *et seq*. The FMCSA sets forth the requirements an individual

---

[1] IBEW also notes that Section 3 of the Agreement prohibits Verizon from disciplining or discharging covered employees without just cause, but it does not explicitly allege that Verizon violated this provision of the Agreement. Indeed, such an allegation would be improper given that IBEW previously informed the Court that it alleged violations only of Sections 8.3 and 14. See Compliance With Court Order, at 1.

9

must satisfy to be medically qualified to operate a commercial motor vehicle. See, e.g., 49 C.F.R. § 392.3. It also establishes specific dispute resolution procedures for controversies regarding medical qualifications. See 49 C.F.R. § 391.47. Thus, if the issue is a matter of driver qualifications, the parties must resolve it through the FMCSA procedures, not arbitration.

The Court finds that the matter at issue here is whether Verizon acted capriciously or arbitrarily when it deemed Taylor medically unqualified to operate a commercial motor vehicle. Thus, the matter at issue is whether Verizon violated Sections 8.3 and 14 of the Agreement. Verizon admits that "on its face," IBEW's grievance alleged such violations. Response, at 8. It contends, however, that the dispute appears to arise out of the Agreement only because IBEW cited Sections 8.3 and 14 of the Agreement when it filed its grievance. The Seventh Circuit has held that citing a collective bargaining agreement section is not enough to establish that a dispute arises from the agreement and thus is arbitrable. Int'l Assoc. of Machinists and Aerospace Workers, Progressive Lodge No. 1000 v. General Elec. Co., 865 F.2d 902, 905 (7th Cir. 1989). Such an interpretation of an arbitration agreement would be "too wooden, too blinkered, too literal-minded." Id. Yet, this is not a situation where the union cited sections of

10

a collective bargaining agreement that obviously do not support its true grievance merely to satisfy a technical requirement. IBEW's true grievance is that Verizon acted capriciously and arbitrarily in handling Taylor's alleged disability status. Substantively, IBEW alleged a violation of the Agreement.

B. Involvement of FMCSA Regulations

The fact that IBEW's claim may involve issues of federal law does not change the fact that it is at heart an arbitrable breach of Agreement claim. Cf. Wisconsin v. Ho-Chunk Nation, 564 F.Supp.2d 856, 862 (W.D. Wis. 2008) ("The fact that such a claim may also be a separate federal cause of action does not override the parties' agreement to arbitrate the issue."). Verizon insists that an arbitrator cannot decide IBEW's claim based on federal law, but that is not accurate. Arbitrators are not prohibited categorically from interpreting federal law. See Butler Mfg., 336 F.3d at 630-31 (holding that an arbitrator could consider the Family and Medical Leave Act in resolving an arbitrable dispute over an employee's termination for absenteeism, and noting, "The [Supreme] Court has made it clear that arbitrators are capable of handling statutory claims . . . .")[2]; Guyden v.

---

[2]The Court notes that in Butler, the Seventh Circuit found that a provision of the collective bargaining agreement stating that the Agreement should be interpreted "in accordance with the provisions of law" explicitly authorized an arbitrator to consider

11

Aetna Inc., 544 F.3d 376, 378 (2d Cir. 2008) ("We hold that claims brought under the Sarbanes-Oxley Act are arbitrable . . . .").

Indeed, arbitrators are *expected* to consider federal law in making their rulings, because arbitration awards in manifest disregard of the law are subject to vacation. See Jonites v. Exelon Corp., 522 F.3d 721, 726 (7th Cir. 2008) ("Where a governing legal principle is well defined, explicit, and clearly applicable to the case, and where the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature, his disregard of it is manifest."). Where arbitrators rely on "external" law in interpreting the parties' rights under a collective bargaining agreement, "the rights themselves are still privately

---

federal law in resolving an arbitrable dispute. Butler, 336 F.3d at 633-34. The Ninth Circuit found that similar contract language, stating that all provisions of the collective bargaining agreement were intended to be "in accordance with Federal and State Law," explicitly empowered an arbitrator to consult federal law in resolving a collective bargaining agreement dispute. George Day Constr. Co., Inc. v. United Brotherhood of Carpenters and Joiners of Am., Local 354, 722 F.2d 1471, 1479 (9th Cir. 1984). The Agreement here provides:
> Should any Federal or State law or regulation, or the final decision of any court of competent jurisdiction, affect any provision of this Agreement, the provision or provisions so affected shall be deemed to be amended so as to conform to the law, regulation or decision, and otherwise this Agreement shall continue in full force and effect.

Compliance With Court Order, Exhibit 1, Agreement, ¶ 1.8. In light of the Seventh and Ninth Circuit holdings, the Court cannot conclude that this provision makes arbitration improper for all collective bargaining agreement disputes involving federal law, as Verizon suggests.

created contractual rights." Cole v. Burns Int'l Sec. Svs., 105 F.3d 1465, 1475 (D.C. Cir. 1997). The external law is merely relevant to determining the collective bargaining agreement rights. Id.

Verizon relies on Wright v. Universal Maritime Service Corp. to argue that disputes involving federal law are not arbitrable, but Wright does not support this position. Wright, 525 U.S. 70 (1998). In Wright, the plaintiff union member filed suit alleging that the defendant employers violated the Americans with Disabilities Act when they refused to employ him. Id. at 75. The defendants had informed the plaintiff's union that under the collective bargaining agreement between the defendants and the union, they could not employ the plaintiff. Id. at 74. In the plaintiff's suit, the defendants argued that the dispute should be submitted to arbitration. Id. at 75. The Supreme Court ruled that the plaintiff's cause of action arose out of the ADA, not the collective bargaining agreement, so arbitration was not required. Id. at 78-79.

Wright is clearly distinguishable from the case here. The plaintiff here is the union, and it is alleging that the employer's action toward the union member violated a Collective Bargaining Agreement. To mirror Wright, this case would have to be a dispute between Taylor and Verizon, in which

Taylor claimed that Verizon violated the FMCSA in prohibiting him from driving. The dispute then would arise out of the FMCSA. Here, while a decision on whether Verizon violated the Agreement may involve an interpretation of the FMCSA regulations, IBEW's dispute does not arise out of the FMCSA. In Wright, the Supreme Court specifically distinguished these two scenarios:

> [Defendants] also rely upon Clause 17 of the CBA, which states that "[i]t is the intention and purpose of all parties hereto that no provision or part of this Agreement shall be violative of any Federal or State Law." They argue that this requires the arbitrator to "apply legal definitions derived from the ADA" in determining whether [the plaintiff] is "qualified" for employment within the meaning of the CBA. Perhaps so, but that is not the same as making compliance with the ADA a contractual commitment that would be subject to the arbitration clause.

Id. at 81 (internal citations omitted).

Moreover, the Court's acknowledgment that an arbitrator may have been required to apply definitions derived from the ADA in determining whether the employer violated the collective bargaining agreement directly contradicts Verizon's argument against arbitration here. An arbitrator may consult the FMCSA regulations in determining whether Verizon acted capriciously or arbitrarily in its treatment of Taylor. Just because an

arbitrator may need to consult external law to determine whether Verizon violated the Agreement does not mean that the dispute at issue arose from the external law.

In fact, other courts have upheld arbitration awards in which the arbitrator consulted FMCSA regulations in determining whether the parties to a grievance violated a collective bargaining agreement. In Yellow Freight System, Inc. v. Martin, the Second Circuit affirmed a case in which a Department of Labor administrative judge deferred to an arbitrator's decision on whether a driver was improperly terminated for refusing to engage in activity he considered a violation of the FMCSA. Yellow Freight System, 983 F.2d 1195, 1197-98 (2d Cir. 1993). The issue in arbitration was whether the collective bargaining agreement prohibited termination of the driver, but the arbitrator had to consult the FMCSA to decide whether the driver's refusal to follow his employer's orders was justifiable. Id. Here, the issue is whether Verizon's conclusion that Taylor was unable to drive a commercial vehicle was arbitrary or capricious, but an arbitrator may need to consult the FMCSA regulations to answer this question. The possible relevance of FMCSA regulations to an arbitrator's interpretation of the Agreement here no more precludes arbitration of this breach of contract

issue than it did the breach of contract issue in Yellow Freight.

Moreover, Yellow Freight is not an aberration. Numerous courts have refused to vacate arbitration awards in which the arbitrator consulted FMCSA regulations in resolving a collective bargaining agreement dispute. See, e.g., Vosch v. Werner Continental, Inc., 734 F.2d 149, 155 (3d Cir. 1984); Louis J. Kennedy Trucking Co. v. Teamsters Local Union No. 701, 2007 WL 2705161, at *1-2 (Dist. N.J. Sept. 17, 2007); Laidlaw Waste Systems, Inc. v. Teamsters, Local 379, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 1990 WL 67865, at *2-3 (D. Mass. May 16, 1990).

C.  Arbitrator's Power to Grant Relief

Verizon also argues that IBEW's grievance is not arbitrable because an arbitrator lacks authority to reinstate Taylor -- the relief IBEW seeks. Under the FMCSA regulations, once a party appeals a decision to the Director of the Office of Bus and Truck Standards and Operations, the driver is disqualified from driving a commercial motor vehicle until the Director orders otherwise. 49 C.F.R. § 391.47. Verizon asserts that Taylor's case has reached this stage, and therefore Taylor cannot drive a commercial motor vehicle until the Director orders. Thus, Verizon argues,

16

Taylor is ineligible for reinstatement.

Verizon's argument fails for two reasons. First, it requires the Court to consider whether IBEW is likely to convince an arbitrator to order Taylor reinstated, and courts are not permitted to weigh the merits of a grievance in deciding whether to order arbitration. United Steelworkers of Am., 363 U.S. at 568.

Second, whether a potential award might violate public policy has no impact on the arbitrability of the dispute, because the parties always have the option to ask a court to vacate an arbitration award. As noted above, courts may vacate an arbitration award if the arbitrator directed the parties to violate the law, because in such a case, the arbitrator engaged in manifest disregard for the law. Jonites, 522 F.3d at 726. The Fifth Circuit did so for exactly the reason Verizon insists makes this dispute unfit for arbitration. In Amalgamated Meat Cutters and Butcher Workmen of North Am. AFL-CIO, Local Union 540 v. Great Western Food Co., an arbitrator ordered a company to reinstate a driver who had been cited for drinking while driving on the job. Amalgamated Meat Cutters, 712 F.2d 122, 123 (5th Cir. 1983). The Fifth Circuit found that the arbitrator's award violated FMCSA regulations and public policy and vacated it. Id. at 125. If an arbitrator

here orders Verizon to allow Taylor to operate a commercial motor vehicle and Verizon believes that this award directs it to violate federal law, it may file suit to vacate the award in federal court. The fact that an arbitrator could order Verizon to violate federal law does not mean the dispute is not arbitrable, however. Notably, the Fifth Circuit did not question the arbitrability of the dispute in <u>Amalgamated Meat Cutters</u>.

II.     REFUSAL TO ARBITRATE

Verizon contends that the FMCSA appeal process remains ongoing, but that the American Arbitration Association administratively closed its case. The parties did not explain the reason for this administrative closure. However, from the arbitrator's prior ruling, it is apparent that he administratively closed the case because months had passed and the FMCSA process still had not concluded. It appears that the arbitrator is waiting for the parties to inform him that the FMCSA process is complete before he continues with the arbitration. Thus, the Court finds that the parties commenced arbitration, that as part of the arbitration process the arbitrator ordered the parties to submit to FMCSA review, and that the arbitration has not concluded yet. Until the FMCSA appeal is resolved, Verizon is not obligated to reschedule the arbitration hearing.

III.  ATTORNEYS' FEES

IBEW argues that it is entitled to attorneys' fees because Verizon's position in this matter was frivolous and without merit.  Given the novelty of the question here, the Court disagrees.  Each party is directed to bear its own costs.

THEREFORE, Plaintiff International Brotherhood of Electrical Workers, Local No. 51's Motion for Summary Judgment (d/e 13) is ALLOWED to the extent that the Court finds that the dispute in question is arbitrable.  It is DENIED to the extent that the parties need not reschedule the arbitration hearing until after the FMCSA appeal is resolved.  The parties are directed to conclude the FMCSA appeal process as expeditiously as possible and then recontact the American Arbitration Association to resume arbitration.  Each party is directed to bear its own costs.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:  December 3, 2008

      FOR THE COURT:

                                  s/ Jeanne E. Scott
                                  JEANNE E. SCOTT
                    UNITED STATES DISTRICT JUDGE